Yantao Xia
*Pro Se*
PMB 466 Box 10001
Saipan, MP 96950
Tel.: (670) 788-0872
Email: xiayantao1988@gmail.com

FILED
Clerk
District Court

FEB 17 2021

for the Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

| | |
|---|---|
| YANTAO XIA, | ) CASE NO.: CV 21-00007 |
| Plaintiff, | ) |
| vs. | ) VERIFIED COMPLAINT |
| CHINESE BIBLE CHURCH INTERNATIONAL INC. aka CBCI INC. dba EUCON INTERNATIONAL SCHOOL, | ) |
| Defendant. | ) |

COMES NOW Plaintiff Yantao Xia ("Xia"), proceeding *pro se* and for his Complaint, states and alleges as follows:

**Jurisdiction**

1. This Court has jurisdiction over Xia's claim under the Fair Labor Standards Act ("FLSA") pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

2. This Court has supplemental jurisdiction over Xia's claims under the laws of the Commonwealth of the Northern Marianas Islands ("**CNMI**") pursuant to 28 U.S.C. § 1367.

**Parties**

3. Xia is a Chinese citizen currently residing in Saipan, CNMI.

4. Defendant Chinese Bible Church International Inc. aka CBCI Inc. dba Eucon International School ("Eucon") is, upon information and belief, a corporation incorporated under

1

the laws of the CNMI, with its principal place of business located in Saipan, CNMI, engaging in (among other businesses) the business of providing grade 1-12 education.

## Factual Background

**1. Eucon Hired Xia in 2018**

5. At all times relevant, upon information and belief, Eucon was managed by Hsieh-Kan Christian Wei ("Wei"), who is a U.S. citizen residing in Saipan, CNMI.

6. At all times relevant, Wei acted as an agent of Eucon and within the scope of his agency with Eucon.

7. Xia came to live and work in Saipan on January 25, 2019.

8. Prior to coming to Saipan in 2019, Xia was a teacher teaching mathematics in an international school in China.

9. In 2018, Wei hired Xia to work for Eucon as a math teacher.

10. On or about September 11, 2008, Xia signed a written employment with Eucon to work as a teacher (the "First Employment Contract").

11. Attached hereto as Exhibit A a true and correct copy of the First Employment Contract.

**2. Eucon Required Xia to Pay Fees in Exchange for Sponsoring His CW-1 Visa**

12. Wei told Xia that Xia would need a CW-1 visa to work in Saipan and asked Xia to contact a person called "Rapture" for processing.

13. At all times relevant, upon information and belief, Rapture acted as an agent of Eucon and within the scope of his agency with Eucon.

14. On or about August 24, 2018, Rapture provided Xia with an agreement with an entity called "CWM Trust, LLC" that would require Xia to pay $2,350.00 for visa processing

2

and told Xia to sign it.

15. The amount of $2,350.00 was substantially higher than normal processing fees charged by legitimate service providers on Saipan.

16. Upon information and belief, CWM Trust, LLC was operated at the same address of Eucon and by Eucon's own employees or agents and was controlled by Eucon and was an alter ego of Eucon.

17. Upon information and belief, Rapture required Xia to pay the $2,350.00 fee at the direction of Wei.

18. Eucon knew that Eucon was legally prohibited from charging via processing fees in exchange for sponsoring a CW-1 employee and therefore devised this way of bypassing the prohibition.

19. More than half of the $2,350.00 was intended by Eucon to be profits for itself, instead of as real visa processing fees.

20. Xia paid the $2,350.00 in two installments to Eucon.

21. Xia eventually received a CW-1 visa.

22. Prior to that, no one from CWM Trust, LLC ever contacted Xia about visa processing.

23. Upon information and belief, the visa processing was entirely done by persons controlled by Eucon or Eucon's agents.

**3. Xia Came to Work on Saipan in 2019**

24. The term of the First Employment Contract was from October 1, 2018 to September 30, 2019.

25. Xia came to Saipan and started to work for Eucon on January 25, 2019 under

3

CW-1 visa sponsored by Eucon.

**4. Eucon Changed Xia's Primary Duty**

26. For the first two months after Xia started working at Eucon, Eucon had Xia teach one Algebra II class (lasting about 50 minutes to 1 hour) per day.

27. Then, starting around April 1, 2019 and lasting until around May 31, 2019, before the beginning of the summer break in June, Eucon had Xia teach a GED class (lasting about 2 hours) per day in addition to the Algebra II class.

28. For the rest of Xia's time at work during the day, Wei told Xia to stay in the library and assist the librarian.

29. While at work, other than teaching classes, Xia performed the duties of a library assistant, as well as the duties of a teacher's assistant, including scoring students' homework for other teachers at Eucon.

30. As a result, the primary job duty of Xia in 2019 up to around May 31, 2019 was not working as a teacher.

31. During the summer break, from June 2019 to around August 12, 2019, Xia taught only the GED class.

32. After the summer break, starting around August 12, 2019, Eucon had Xia teach more classes, totaling about 4 to 5.5 hours per day.

**5. Eucon Had Xia Sign a New Employment Contract to Avoid Paying Xia Prevailing Wage**

33. Around September 2019, when the term of the First Employment Contract was about to expire, Eucon had Xia sign a new employment contract (the "Second Employment Contract").

34. Attached hereto as Exhibit B a true and correct copy of the Second Employment

4

Contract.

35. Eucon changed Xia's job title to "Library Assistant."

36. Upon information and belief, Eucon had Xia signed the Second Employment Contract because the CNMI had recently issued its latest prevailing wage survey and Eucon wanted to avoid paying Xia new prevailing wage for teachers.

37. The wage rate in the Second Employment Contract was $9.64 per hour.

38. This wage rate was substantially lower than the new prevailing wage for teachers like Xia.

39. Xia's job duties did not change after signing the Second Employment Contract.

40. Eucon continued to have Xia teach classes totaling about 4 to 5.5 hours per day, except for during the December holiday break, which lasted about one month—there was no class during the break.

**6. During the COVID-19 Outbreak, Eucon Terminated Xia's Employment**

41. In March 2020, immediately after the initial 2-week shutdown in the CNMI during the COVID-19 outbreak, Eucon's management wanted to reopen Eucon as soon as possible.

42. They demanded Xia to start remote teaching.

43. Xia, however, wanted to take leave to stay at home during the uncertain pandemic situation and care for his three minor children because school was closed.

44. Xia also felt that his English was not good enough for remote teaching.

45. Xia told Eucon's management that he felt that his English was not good enough for remote teaching.

46. Even though Xia's Second Employment Contract stated that Xia's title was

5

Library Assistant, Wei informed Xia that by refusing to start remote teaching, Xia was not complying the school's "order" and would be fired.

47. Xia then received a letter entitled "Notice of Employment Contract Termination" dated April 3, 2020 purporting to terminate his employment with Eucon effective as of April 3, 2020 (the "Notice of Termination").

48. Attached hereto as Exhibit C is a true and correct copy of the notice.

49. As a result, Xia's employment with Eucon was terminated on April 3, 2020.

**7. While Working for Eucon, Xia Was Severely Underpaid**

50. Both the First Employment Contract and the Second Employment Contract provided that Xia's work hours would be 8 a.m. to 5 p.m.

51. However, during Xia's employment with Eucon, except when during breaks, Eucon required Xia to come to work at 7:30 a.m. in the morning to have a staff meeting every morning.

52. At 7:30 a.m., the room where the device for Eucon's employees to clock in and out would be locked, preventing them to clock in their actual time of starting work.

53. Then, around 8:00 a.m., after the staff meeting, the room would be unlocked, so that the employees could clock in with 8 a.m. as their starting time, even though they started half of an hour earlier.

54. In the evening, Wei required certain employees, including Xia, to attend bible study sessions lasting on average 1.5 hours per day, except Mondays and Fridays, regardless of holidays.

55. For the first few days after Xia started working at Eucon, Xia did not attend the study sessions.

6

56. Wei then informed Xia, through another employee of Eucon, that the study sessions were mandatory and if Xia did not attend, there would be negative consequences. Xia did not want to attend and asked Wei whether he could take leave. Wei responded that Xia should not ask Wei for leave, but should ask God for leave, which Xia understood as Wei saying Xia could not take leave.

57. Xia then started to attend the study sessions until his employment with Eucon was ultimately terminated in April 2020, except for a total period of approximately 30 times he did not attend due to family and personal reasons.

58. As a result, except for during the summer break in 2019 (about two months), the December holiday break (about one month), legal holidays, and about 3 days in total of personal leave, Xia's work hours at Eucon were from 7:30 a.m. to 5 p.m. (except for a lunch break of about 0.5 hour) Monday to Friday, plus 1.5 hours in the evening for mandatory bible study sessions except for Mondays and Fridays and the approximate 30 times when he did not attend.

59. Even during the summer break, the December break, and legal holidays, Xia still had to go to the mandatory bible study sessions.

60. However, Eucon did not adequately compensate Xia.

61. Below is a summary the payments received by Xia from Eucon for each month.

| Month | Amount Paid |
|---|---|
| January 2019 | $0.00 |
| February 2019 | $377.00 |
| March 2019 | $377.00 |
| April 2019 | $628.34 |
| May 2019 | $628.34 |

7

| Month | Amount |
|---|---|
| June 2019 | $319.00 |
| July 2019 | $130.50 |
| August 2019 | $1,256.66 |
| September 2019 | $1,256.66 |
| October 2019 | $1,256.66 |
| November 2019 | $1,256.66 |
| December 2019 | $966.67 |
| January 2020 | $210.89 |
| February 2020 | $1,670.92 |
| March 2020 | $835.46 |
| April 2020 | $0.00 |

## First Cause of Action

## Breach of Contract as to First Employment Contract

62.  Xia re-alleges and incorporates all the above paragraphs as if restated in full here.

63.  The First Employment Contract is a valid and enforceable contract between Xia and Eucon.

64.  The First Employment Contract provided that Xia would be paid at a rate of $7.26/hour and 1.5 times that rate for overtime unless exempt.

65.  All conditions precedent to Xia receiving wages at this rate had been met or otherwise waived.

66.  Eucon breached the First Employment Contract by (among other conduct):

   a. Not paying Xia's regular work hours at the rate of $7.26/hour; and

   b. Not paying Xia's overtime hours at the rate of 1.5 times $7.26/hour, at least

during the period from January 25, 2019 to around May 31, 2019, because during that period, Xia's primary duty was not that of a teacher, making him a non-exempt employee under applicable labor laws (or, alternatively, if Xia was an exempt employee, he was still entitled to at least the wage rate of $7.26/hour for overtime hours).

67. As a direct and proximate result of Eucon's breach, Xia suffered damages.

## Second Cause of Action

## Breach of Contract as to Second Employment Contract

68. Xia re-alleges and incorporates all the above paragraphs as if restated in full here.

69. The Second Employment Contract is a valid and enforceable contract between Xia and Eucon.

70. The Second Employment Contract was the basis for Eucon to renew Xia's CW-1 visa in 2019.

71. As a result, the Second Employment Contract incorporated an employer's obligations under the relevant Federal regulations governing the CW-1 visas, including (among other obligations):

　　a. The rate to be paid to the employee must equal or exceed the applicable prevailing wage; and

　　b. The employer guarantees a minimum number of work hours equal to three-fourths of the workdays of the total period of employment specified in the contract.

72. All conditions precedent to Eucon performing the Second Employment Contract had been met or otherwise waived.

73. Eucon breached the Second Employment Contract by (among other conduct):

   a. Forcing Xia to work primarily as a teacher instead of a library assistant;

   b. Not paying Xia's regular work hours the wage rate required by the Second Employment Contract; and

   c. To the extent that Xia's employment is deemed to be as a library assistant pursuant to the job title in the Second Employment Contract, not paying Xia's overtime hours at the rate of 1.5 times his rate for regular hours as a library assistant would be a non-exempt employee under applicable labor laws (or alternatively, not paying Xia at least the normal wage rate under the Second Employment Contract);

   d. Not fulfilling the three-fourths guarantee;

   e. Not paying Xia the prevailing wage for teachers;

   f. Wrongfully terminating Xia's employment without advance notice, even though the Second Employment Contract provided that termination for cause required at least ten days' notice.

74. As a direct and proximate result of Eucon's breach, Xia suffered damages.

### Third Cause of Action

### Violation of the CNMI Minimum Wage and Hour Act ("MWHA")

75. Xia re-alleges and incorporates all the above paragraphs as if restated in full here.

76. At all times relevant, Eucon and Xia were covered by MWHA.

77. MWHA required a minimum wage of $3.05 per hour.

78. MWHA also required employers to pay non-exempt employees overtime pay at the rate of 1.5 times their regular rate.

79. At least during the time when Xia's primary duty at Eucon was not that of a teacher, Xia was a non-exempt employee.

80. Eucon violated MWHA by not paying Xia the minimum wage and overtime pay required by MWHA.

81. Eucon's violation of MWHA was willful.

82. As a result of Eucon's violation of MWHA, Xia suffered damages.

## Fourth Cause of Action

## Violation of the Fair Labor Standards Act ("FLSA")

83. Xia re-alleges and incorporates all the above paragraphs as if restated in full here.

84. At all times relevant, Eucon was covered by FLSA.

85. At least during the time when Xia's primary duty at Eucon was not that of a teacher, Xia was a non-exempt employee covered by FLSA.

86. Eucon violated FLSA by not paying Xia the minimum wage and overtime pay required by FLSA.

87. Eucon's violation of FLSA was willful.

88. As a result of Eucon's violation of FLSA, Xia suffered damages.

## Fifth Cause of Action

## Fraud as to the $2,350 Processing Fee

89. Xia re-alleges and incorporates all the above paragraphs as if restated in full here.

90. The agreement Rapture provided to Xia in August 2018 with CMW Trust, LLC stated that the $2,350.00 was "visa processing fee, service fee and documentation fee" for CWM Trust, LLC.

91. Upon information and belief, this statement was made at the direction of Eucon.

92. Upon information and belief, this statement was false and misleading because a substantial part of $2,350.00 was to be profits of Eucon.

93. Upon information and belief, there was no service to be provided by CWM Trust, LLC—the CW-1 visa processing would be done by persons controlled by Eucon itself.

94. Upon information and belief, at the time the statement was made at the direction of Eucon, Eucon knew that the statement was false and misleading.

95. Xia reasonably understood the statement to mean that the $2,350.00 were the costs of processing the CW-1 visa by a third party, not any profit or gain to be made by Eucon in exchange for sponsoring his CW-1 visa.

96. Xia justifiably relied upon the statement and paid the $2,350.00 to Eucon.

97. As a direct and proximate result of the reliance, Xia has suffered damages.

## PRAYER FOR RELIEF

WHEREFORE, Xia prays for relief as follows a judgment for:

a. Compensatory damages in an amount to be proven at trial;

b. Liquidated damages under MWHA and FLSA;

c. Costs of suit (including reasonable attorney's fees, if any); and

d. Such other and equitable relief as this Court deems just and proper.

Date: February 17, 2021.

_____
Yantao Xia, *Pro Se*